IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARTIN J. GONZALES, § § Plaintiff, § § v. § § SNH SE TENANT TRS, INC. § and RBC CAPITAL MARKETS, LLC, § § Defendants. § | CIVIL ACTION NO. H-14-3086 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Martin J. Gonzales, filed a First Amended Complaint on December 19, 2014 (Docket Entry No. 4). Plaintiff's complaint alleges a number of claims, including <u>inter alia</u> a claim for tortious interference with contract rights. Pending before the court is Defendant SNH SE Tenant TRS, Inc. d/b/a The Gardens of Bellaire's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Docket Entry No. 5). The motion argues that the claim for tortious interference with contract rights asserted against The Gardens of Bellaire should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Plaintiff filed his Response on January 29, 2015 (Docket Entry No. 11). For the reasons explained below, the pending motion will be granted, and the claim for tortious interference with contract rights asserted against The Gardens of Bellaire will be dismissed with prejudice.

## I. Factual Allegations[1]

Plaintiff alleges that he was the common law husband of Lillian Hester, that in August of 2014 Hester fell, broke her hip, and required surgery, and that in early September of 2014 Hester was admitted for rehabilitation to an assisted living facility owned and operated by defendant SNH SE Tenant TRS, Inc. d/b/a The Gardens of Bellaire ("The Gardens").  Plaintiff alleges that Hester's surgery and pre-existing heart condition prompted her to contact her attorney to change her estate plan, and that when Hester's attorney came to The Gardens to carry out Hester's testamentary wishes, "no less than six (6) The Gardens personnel swarmed into [Hester's] small room and demanded that the lawyer and [the plaintiff] vacate the premises."[2]  Plaintiff alleges that The Gardens threatened him with criminal trespass charges if he returned to visit Hester, contacted the Bellaire police department and falsely represented that Texas Adult Protective Services had issued a protective order forbidding him from having contact with Hester.  Plaintiff alleges that The Gardens' conduct caused him to suffer emotional strain sufficiently severe to send him to the emergency room in a state of nervous collapse.  Plaintiff also alleges upon information and belief that The Gardens falsely told third parties that he was attempting to misappropriate Hester's funds.

---

[1]First Amended Complaint, Docket Entry No. 4, pp. 2-4 ¶¶ 5-24.

[2]Id. at 3 ¶ 18.

## II. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

## III. Analysis

The Gardens argues that plaintiff's claim for tortious interference with contract rights is subject to dismissal with

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because "there is no basis for Plaintiff's claim that Defendant tortiously interfered with a contract because marriage is not considered a contract in Texas."[3] Citing Gowin v. Gowin, 264 S.W. 529, 540 (Tex. Civ. App. — Fort Worth 1924), aff'd, 292 S.W. 211 (Tex. Comm'n App. 1927), The Gardens argues that

> [a]lthough some courts have referred to marriage as a "civil contract," Texas courts have long recognized that the purpose of referring to marriage as a civil contract is to negate the idea that it is "an ecclesiastical sacrament" and, therefore, is not subject to the control of churches or sects.[4]

Citing McGinley v. McGinley, 295 S.W.2d 913, 915 (Tex. Civ. App. 1956), The Gardens stresses that in Texas, "marriage is not, in and of itself, a contract vesting rights in the parties."[5] Citing PaineWebber, Inc. v. Murray, 260 B.R. 815, 824 (E.D. Tex. 2001), The Gardens argues that Federal courts also acknowledge that Texas regards marriage as a status, not as a contract.[6]

Plaintiff responds that "[d]efendant has not cited a single authority for the proposition that a wrongdoer may interfere with a couple's marriage relationship with impunity."[7] Citing Esparza

---

[3]Defendant SNH SE Tenant TRS, Inc. d/b/a The Gardens of Bellaire's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Defendant's Motion to Dismiss"), Docket Entry No. 5, p. 3 ¶ 6.

[4]Id. at 4 ¶ 8.

[5]Id.

[6]Id.

[7]Gonzales' Response to Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 11, p. 7 ¶ 25.

v. Esparza, 382 S.W.2d 162 (Tex. Civ. App. — Corpus Christi 1964, no writ), for that court's observation that an element of an informal marriage is an agreement of the parties, and asserting that he and Hester agreed to be married and considered themselves married, plaintiff argues that his marriage to Hester "was a contract because it arose from the agreement of the parties."[8] Plaintiff argues that The Gardens wrongfully interfered with his marital relationship with Hester by falsely telling the police that Texas Adult Protective Services had issued an order "protecting" Hester from him and threatening him with criminal trespass charges if he visited Hester.[9] Plaintiff argues that The Gardens' actions "separated a loving couple and made it impossible for [him] to have the normal companionship of a husband with his wife, including keeping her company and comforting her as her health declined."[10]

Texas courts recognize a claim for tortious interference with contract rights. A party alleging tortious interference with contract rights under Texas law must plead and prove four elements:

> (1) that a contract subject to interference exists;
> (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred.

---

[8] Id. ¶ 24.

[9] Id. at 4 ¶ 16.

[10] Id. ¶ 17.

ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997) (citing Juliette Fowler Homes v. Welch Associates, 793 S.W.2d 660, 665 (Tex. 1990)). "[I]f a plaintiff establishes the elements of this cause of action, a defendant may still prevail upon establishing the affirmative defense of justification." Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex. 1996).

Plaintiff's attempt to base such a claim on the existence of a marriage has no merit, however, because a marriage contract is not a contract subject to interference under Texas law. See Gowin, 292 S.W. at 214-15 (absent prayer for divorce, spouses have no cause of action against one another for breach of a marriage contract); Hogue v. Hogue, 242 S.W.2d 673, 676 (Tex. Civ. App. – Dallas 1951, no writ) (a marriage contract contemplates existence of an agreement to be married so long as the parties live, that unlike an ordinary contract, cannot be dissolved by mutual consent); Hopkins v. Hopkins, 540 S.W.2d 783, 786 (Tex. Civ. App. – Corpus Christi 1976, no writ) ("Texas does not regard the marital relationship as a contract vesting rights in the parties so as to preclude the retroactive application of amendments to the laws which govern that relationship.").

The Texas Supreme Court has long recognized the marital relationship as "the primary familial interest recognized by the courts." Whittlesey v. Miller, 572 S.W.2d 665, 666 (Tex. 1978). The Court has also recognized that "[t]he remedy for the negligent

or intentional impairment of this relationship is a tort action for loss of consortium." Id. In Whittlesey the Texas Supreme Court observed that

> [c]onsortium has been the subject of many different definitions by the courts, but it can generally be defined to include the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage.

Id. The Court explained that

> [t]he phrase "loss of consortium" is more accurately described as an element of damage rather than a cause of action. But courts have so frequently used the phrase to denote those actions in which loss of consortium is the major element of damage that "loss of consortium" has come to be referred to as a cause of action.

Id. at n.1. Texas courts do not recognize a right of recovery for damages arising from interferences with familial relationships between a husband and wife that do not rise to the level of loss of consortium. See Transportation Insurance Company v. Archer, 832 S.W.2d 403 (Tex. App. – Fort Worth 1992, writ denied). In Archer a wife sued her husband's workers' compensation insurer for familial interference. Reasoning that interference with the family relationship may occur without substantially impairing the elements constituting loss of consortium, the court held that conduct causing loss of consortium constitutes familial interference but that interference alone is not the equivalent of loss of consortium. Id. at 405. See Helena Laboratories Corp. v. Snyder, 886 S.W.2d 767, 768 (Tex. 1994) (no cause of action for negligent

interference with family relationship); <u>Stites v. Gillum</u>, 872 S.W.2d 786, 793 (Tex. App. — Fort Worth 1994, writ denied) (recognizing intentional infliction of emotional distress as a cause of action that might be available to a spouse seeking damages from a third party).

Plaintiff in the present case bases his claim for tortious interference with contract rights on allegations that The Gardens' actions deprived him of Hester's companionship. In <u>Whittlesey</u> the Court recognized that claims for loss of consortium are derivative claims that do not lie absent an underlying personal injury claim belonging to the other spouse. Thus, in order to recover damages for loss of consortium a spouse asserting a derivative claim for loss of consortium must first prove that the defendant is also liable to the injured other spouse for personal injuries causing loss of consortium. See <u>Strickland v. Medlen</u>, 397 S.W.3d 184, 195 (Tex. 2013) (describing "[l]oss of companionship [a]s a component of loss of consortium — a form of personal-injury damage, not property damage — and something we have 'narrowly cabined' to two building-block human relationships: husband-wife and parent-child"). Plaintiff's claim for breach of contract rights arising from a contract of marriage appears to be an artful attempt to assert a claim for loss of consortium without having to allege or prove that The Gardens is liable for a physical injury to Hester. Accordingly, Defendant SNH SE Tenant TRS, Inc. d/b/a The Gardens of

-8-

Gardens of Bellaire's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Docket Entry No. 5) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 9th day of March, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE